IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-00934-PAB-CYC

POLICA HOUSTON,

     Plaintiff,

v.

DAMON SMITH, in his individual and official capacity,

     Defendant.

_____

**ORDER**
_____

This matter is before the Court on Defendants' Motion to Strike Plaintiff's Experts Dr. Ned Calonge and Dr. Marshall Hennington [Docket No. 34], filed on November 7, 2024.[1]  On November 14, 2024, plaintiff Polica Houston responded.  Docket No. 35.  Mr. Smith replied on November 20, 2024.  Docket No. 38.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.    BACKGROUND

The complaint alleges that, on May 17, 2022, the Aurora Public Schools ("APS") Board of Education voted not to renew Mr. Houston's contract as an assistant principal for Gateway High School in Aurora, Colorado.  Docket No. 1 at 48, ¶ 66.  During that time, Mr. Smith was the chief personnel officer at APS.  *Id.* at 2, 4, ¶¶ 4, 16.  Mr. Houston alleges that the Board of Education voted not to renew Mr. Houston's contract

_____

[1] Defendants' motion was filed on behalf of defendants Damon Smith, Carole Jennings, Michael Carter, Tramaine Duncan, Vicki Reinhard, and Debbie Gerkin.  *See* Docket No. 34.  The Court has since dismissed plaintiff's claims against all but Mr. Smith.  *See* Docket Nos. 37, 50.

because Mr. Smith disciplined Mr. Houston for violating an APS COVID-19 policy by traveling during the summer of 2021.  *See id.* at 6, ¶ 24.  However, Mr. Houston claims that his travel did not violate any APS policy.  *Id.*, ¶ 23.  Instead, Mr. Houston alleges that Mr. Smith used the APS policy as a pretext to discriminate against Mr. Houston because of his race.  *See id.* at 5, ¶ 18.  Mr. Houston is Black.  *Id.* at 3, ¶ 13.  Mr. Houston brings one claim under 42 U.S.C. § 1983 for racial discrimination in violation of 42 U.S.C. § 1981 against Mr. Smith.  *Id.* at 55, ¶¶ 76-78.

On October 28, 2024, Mr. Houston disclosed Marshall Hennington, Ph.D., as an expert witness pursuant to Federal Rule of Civil Procedure 26(a).  Docket No. 34-2 at 8. Mr. Houston disclosed Ned Calonge, M.D., as an expert witness on October 30, 2024. Docket No. 34-1 at 2.  On November 7, 2024, Mr. Smith filed a motion to exclude Mr. Houston from introducing the testimony of these experts at trial.  Docket No. 34.  He argues that Mr. Houston's disclosures are insufficient under Rule 26(a)(2), that Dr. Hennington's opinions should be excluded under Federal Rule of Evidence 702, and that sanctions are appropriate under Federal Rule of Civil Procedure 37(c).  *Id.* at 1-10.

## II.   LEGAL STANDARD

### A.   Rule 26

Federal Rule of Civil Procedure 26(a) governs the requirements for disclosure of witnesses.  Rule 26(a)(2)(B) provides that, if a "witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the party offering the witness must supplement its disclosure with an expert report.  Fed. R. Civ. P. 26(a)(2)(B).  The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.*

For expert witnesses whom the sponsoring party has not retained, Rule 26(a)(2)(C) applies. The disclosure for non-retained experts must state "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). "A summary is defined as a brief account that states the main points of a larger body of information." *Roof Rehab, LLC v. Travelers Cas. Ins. Co. of Am.*, No. 20-cv-01863-RMR-NYW, 2021 WL 5579053, at *3 (D. Colo. Nov. 30, 2021) (quoting *Nicastle v. Adams Cnty. Sheriff's Off.*, No. 10-cv-00816-REB-KMT, 2011 WL 1674954, at *1 (D. Colo. May 3, 2011)). "While a disclosure need not 'outline each and every fact to which the non-retained expert will testify,' it should 'provide a brief account that states the main points of the entirety of the anticipated testimony.'" *Id.* (quoting *Vanderlaan v. Ameriprise Auto & Home Ins.*, No. 20-cv-00191-PAB-STV, 2021 WL 4441518, at *6 (D. Colo. Sept. 28, 2021)). "The purpose of expert disclosures is to eliminate surprise and provide opposing counsel with enough information to prepare efficiently for deposition, any pretrial motions and trial."

*Nosewicz v. Janosko*, No. 16-cv-00447-PAB-KLM, 2019 WL 4248895, at *3 (D. Colo. Aug. 19, 2019), *report and recommendation adopted*, 2019 WL 4242739 (D. Colo. Sept. 6, 2019) (internal quotations, citation, and alterations omitted); *see also Williams v. Haubstein*, 2022 WL 4547466, at *4 (D. Kan. Sept. 29, 2022) ("The purpose of the expert disclosure requirements is to avoid the danger of unfair surprise.").

### B. <u>Rule 37</u>

Federal Rule of Civil Procedure 37(c) provides that, if a party fails to provide information as required by Rule 26, the party is not allowed to use that information unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). The "determination of whether a Rule 26(a) . . . violation is justified or harmless is entrusted to the broad discretion of the district court." *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017). In making this determination, courts consider: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.* (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

### C. <u>Rule 702</u>

Rule 702 of the Federal Rules of Evidence 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

4

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590-91 (1993).  If challenged by a party opposing the testimony of an expert witness, Rule 702 "imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions."  *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1307 (10th Cir. 2015) (citation omitted).  However, "[t]he proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible."  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).  "[T]he proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence."  *Id.* (quoting Fed. R. Evid. 702 advisory committee's note (2000)).

To determine whether an expert opinion is admissible pursuant to Rule 702, the court must perform "a two-step analysis."  *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2022); *see also 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  First, the court must determine whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion.  *Roe*, 42 F.4th at 1180 (quoting Fed. R. Evid. 702).  Second, if the expert is sufficiently qualified, the proffered opinions must be assessed for reliability.  *Id.* at 1180-81; Fed. R. Evid. 702(b)-(d) (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

Under Rule 702, a court must also ensure that the proffered testimony is relevant and will assist the trier of fact.  *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006).  "Relevant expert testimony must logically advance[ ] a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury

in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (quotations and citations omitted).  In assessing whether expert testimony will assist the trier of fact, a court should also consider "whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role.'" *Id*. at 476-77 (quoting *Rodriguez-Felix*, 450 F.3d at 1123).

### III.    ANALYSIS

#### A.  <u>Dr. Calonge</u>

Mr. Houston's Rule 26 expert disclosure states that Dr. Calonge is the chief medical officer for the Colorado Department of Health and Environment.  Docket No. 34-1 at 1.  Mr. Houston identifies the subject of Dr. Calonge's testimony as the "[s]tatus of safety travel for Coloradoans, relating to COVID 19, in the years 2020, 2021, and 2022."  *Id.*  The entirety of Mr. Houston's summary of Dr. Calonge's expected testimony is as follows:

> 1. Thousands of Coloradoans traveled during the summer of 2021.
>
> 2. Travel during summer, of 2021, was reasonable, during July.
>
> 3. Safety precautions were prudent.
>
> 4. Perceptions and dangers of COVID 19 diminished between January 2020 and July 2021.

*Id.* at 1-2.

Mr. Smith argues that Dr. Calonge's opinions should be excluded because Mr. Houston has improperly designated Dr. Calonge as a witness.  Docket No. 34 at 4.  He cites an email chain between Dr. Calonge and counsel for Mr. Smith, wherein Dr. Calonge states he has never been contacted by Mr. Houston and that, even if Mr. Houston were to ask Dr. Calonge to testify at trial, Dr. Calonge would decline the

request.  Docket No. 34-3 at 1 ("I can find no contacts from Mr. Houston at my school email (this one) or my CDPHE email.  I . . . assure you that if I am contacted with a request, I will decline it.").  Mr. Smith claims that Mr. Houston's disclosure is "nothing but wishful thinking" and that the "false designation alone should justify striking this witness and awarding attorneys' fees incurred to respond."  Docket No. 34 at 4.  Mr. Houston responds that he had a good faith basis for designating Dr. Calonge as an expert witness in this case.  Docket No. 35 at 4.

This case is similar to *Michel v. Yale Univ.*, 2022 WL 6493546, at *1 (D. Conn. Mar. 30, 2022).  In that case, plaintiff disclosed three non-retained experts pursuant to Rule 26(a)(2)(C).  *Id.*  Defendant moved to strike the expert disclosures and to preclude the experts from testifying at trial.  *Id.*  The court found that, in addition to a "scant one-paragraph explanation of the purported facts and opinions to which the non-retained experts are 'expected to testify," plaintiff's counsel "acknowledged that he had never spoken with these 'nonretained' individuals and did not know whether they would be willing to testify in this case."  *Id.* at *1-2 (alterations and quotations omitted).  Moreover, defendant produced declarations from two of the three experts stating that they would decline to testify if asked by plaintiff.  *Id.* at *2.  The court explained that Rule 26(a)(2)(C) requires the disclosure of (1) "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705" and (2) "a summary of the facts and opinions to which the witness is expected to testify."  *Id.* at *2-3 (quoting Fed. R. Civ. P. 26(a)(2)(C)).  The court found that, under "the plain language of Rule 26(a)(2)(C) . . . , a witness disclosed under this provision must be *actually expected* to testify" and that the "summary provided in a non-retained expert disclosure contain an *actual opinion*" about the case.  *Id.* at *3-4.  The court held that

plaintiff's designation was improper because plaintiff had no good faith basis to expect

that the designated experts would testify and had no reason to believe that the experts

had the opinions disclosed.  *Id. at ?* ("It is unfathomable how plaintiff's counsel can

reasonably assert that these witnesses are 'expected' to testify, let alone what the

expected nature of their testimony is, when plaintiff's counsel . . . has never spoken to

these three individuals.  Indeed, the evidence of record now directly contradicts

plaintiff's position that Ms. Akers and Ms. Venable are 'expected' to testify at all.").

Similarly, in *Small v. Amgen, Inc.*, 2017 WL 5443912, at *4 (M.D. Fla. Feb. 15, 2017),

the court struck the expert disclosures of five non-retained treating physicians because

"Plaintiffs' counsel did not speak to these five treating physicians to confirm their

willingness to serve as experts or to give an expert opinion on the question of

causation."  Instead, "each physician has informed Defendants' counsel that he or she

will not or cannot serve as an expert witness in this case."  *Id.*  Accordingly, the court

found that the plaintiffs' designations were "both inaccurate and improper."  *Id.*

Here, the Court finds that Mr. Houston did not have a good faith basis for

designating Dr. Calonge as an expert witness in this case.  Counsel for Mr. Houston

appears to concede that he never contacted Dr. Calonge about testifying in this case.

Docket No. 35 at 3-5.  In fact, Mr. Smith produces credible evidence that, even if Dr.

Calonge were to be asked to testify, he would decline the request.  Docket No. 34-3 at

1.  Moreover, Rule 26(a)(2)(C)(i) requires the disclosure of the "subject matter on which

the witness is expected to present evidence."  Fed. R. Civ. P. 26(a)(2)(C)(i).  Given that

Mr. Houston has not communicated with Dr. Calonge, Mr. Houston has no basis to

"expect" what opinions Dr. Calonge will offer at trial.  Therefore, the Court finds that Mr.

Houston's disclosure is improper because Mr. Houston does not have knowledge of Dr.

Calonge's expected testimony and because Mr. Houston has no basis to believe that
Dr. Calonge is expected to testify in this case. *Small*, 2017 WL 5443912, at *4.

Even if the Court were to ignore the fact that Dr. Calonge is not expected to
testify, Mr. Houston's disclosure is also insufficient because the disclosure does not
identify the basis for Dr. Calonge's opinions. "While a disclosure need not outline each
and every fact to which the non-retained expert will testify, it should provide a brief
account that states the main points of the entirety of the anticipated testimony." *Roof
Rehab*, 2021 WL 5579053, at *3 (internal quotations and citation omitted). The
disclosures must "obviate the danger of unfair surprise regarding the factual and opinion
testimony of the non-retained expert." *Id.* The Court finds that the disclosure states the
subject matter on which Dr. Calonge is expected to testify, namely, the safety of travel
during the pandemic. *See* Docket No. 34-1 at 1. The disclosure also summarizes Dr.
Calonge's opinions that travel was safe, but that safety precautions were prudent. *Id.*
Moreover, the disclosure summarizes Dr. Calonge's opinion that the dangers of COVID-
19 and the public's perception of those dangers diminished from 2020 to 2021. *Id.* at 2.
Nevertheless, courts have rejected the argument that a summary of opinions, without a
summary of the expert's factual support for the opinions, is sufficient under Rule
26(a)(2)(C). *See*, *e.g.*, *Nosewicz*, 2019 WL 4248895, at *6 ("the Court rejects Plaintiff's
argument that an adequate summary of opinions alone may absolve a disclosing party
of the obligation to identify the factual basis for those opinions without any degree of
specificity"); *see also Roof Rehab*, 2021 WL 5579053, at *3 ("Plaintiff concedes that the
designation fails to state a summary of the facts of her opinion, but asserts that any
violation of Rule 26(a) was harmless." (citation and quotation omitted)). Rather, "the
Advisory Committee's note to the 2010 amendments states that the amended version of

Rule 26(a)(2)(C) mandates summary disclosures of the opinions to be offered by expert
witnesses who are not required to provide reports under Rule 26(a)(2)(B) *and of the
facts supporting those opinions*." *Nosewicz*, 2019 WL 4248895, at *6 (alterations
omitted) (quoting *Seeley v. Home Depot U.S.A., Inc.*, No. 17-cv-00584-PAB-NYW, 2018
WL 4275375, at *5 (D. Colo. Sept. 7, 2018) (quotations and alterations omitted)).  By
not including any facts in the disclosure, the Court finds that the disclosure does not
afford Mr. Smith an adequate opportunity to prepare for trial.  The disclosure fails to
explain why Dr. Calonge believes that travel was safe in the summer of 2021 or how he
determined that public perceptions of the pandemic changed.  For this additional
reason, the Court finds that Dr. Calonge's disclosure violates Rule 26(a)(2)(C).

Courts have taken different approaches to remedy a party's improper disclosure
of experts who have not been contacted or who have not agreed to testify.  In *Michel*,
2022 WL 6493546, at *6, the court denied defendant's request to preclude the
uncontacted experts from testifying.  Instead, the court stated that, "[i]f plaintiff believes
these individuals are significant witnesses, and will actually participate in this litigation,
the Court will permit plaintiff an additional opportunity to disclose them as experts."  *Id.*
However, in *Small*, 2017 WL 5443912, at *4, the court struck plaintiffs' experts and
precluded them from testifying at trial.  The court noted that the parties had previously
been admonished that the discovery deadline would not be extended and that, "in light
of the limited time remaining before trial, . . . no other result is warranted or appropriate."
*Id.*

Here, Mr. Houston provides no evidence that he has since contacted Dr. Calonge
or that Dr. Calonge is now willing to participate in this litigation.  *See* Docket No. 35.
Moreover, the final pretrial order states that discovery in this case has closed.  Docket

No. 54 at 4.  Any future disclosure of Dr. Calonge's opinions would be untimely.  *See Iwaskow v. Safeco Ins. Co. of Am.*, No. 21-cv-00005-PAB-SBP, 2024 WL 115167, at *2 (D. Colo. Jan. 10, 2024) ("Mr. Iwaskow's problem is that, although Rule 26(a) and (e) contemplate disclosures made up to thirty days before trial, *see* Fed. R. Civ. P 26(a)(3)(B), Mr. Iwaskow is also subject to the deadlines in the Court's scheduling orders." (citing *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015)). Finally, Mr. Houston has not asked the Court to extend the discovery deadline or to supplement his disclosure with any of Dr. Calonge's reasonably expected opinions. *See* Docket No. 35.  Given that Dr. Calonge has indicated that he will not testify in this case, the Court will grant that portion of Mr. Smith's motion seeking to preclude Dr. Calonge from testifying at trial.  Fed. R. Civ. P. 37(c)(1) (if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial").

### B.  Dr. Hennington

Mr. Smith maintains that Dr. Hennington's opinions should be excluded under both Rule 26(a)(2)(B) and Rule 702.  *See* Docket No. 34 at 6-10.  First, Mr. Smith argues that Rule 26(a)(2)(B) requires Dr. Hennington to produce an expert report.  *Id.* at 7.  While Mr. Smith acknowledges that Mr. Houston provided Mr. Smith with a Rule 26 disclosure, the disclosure was not accompanied by an expert report.  *See id.*  As such, Mr. Smith asserts that Dr. Hennington should not be permitted to testify at trial.  *Id.*

Under Rule 26(a)(2)(B), Dr. Hennington's report must include the following information:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Mr. Houston's disclosure lists various opinions of Dr. Hennington under the heading of "Declaration", as well as the "Basis and Reasons" for his opinions. Docket No. 34-2 at 1-3. The disclosure identifies materials that Dr. Hennington consulted in reaching his opinions and attaches copies of various APS policies and Colorado statutes relied on by Dr. Hennington. *Id.* at 3-4, 11-53. The disclosure provides Dr. Hennington's training and experience, lists other trials in which he has testified, lists Dr. Hennington's previous publications, and provides his compensation rates in this case. *Id.* at 4-8. Finally, the disclosure is signed by Dr. Hennington. *Id.* at 8. Mr. Houston appears to have combined Dr. Hennington's expert report and Mr. Houston's disclosure into a single document. Although such combination is not ideal, because the document includes the information required in an expert report, *see* Fed. R. Civ. P. 26(a)(2)(B), the Court finds that any prejudice to Mr. Smith by Mr. Houston combining these separate documents is harmless. Therefore, the Court will treat Mr. Houston's disclosure as Dr. Hennington's report and will evaluate Dr. Hennington's opinions based on this report.

### 1. Rule 702

Dr. Hennington's report states that "Defendant, Damon Smith, violated Aurora

Public School District policy when Defendant, Damon Smith, discriminated against

Plaintiff and intentionally interfered with Plaintiff's contract with Aurora Public Schools."

Docket No. 34-2 at 1.  Dr. Hennington provides the following "Basis and Reasons" for

his opinion:

> a. Policy GCQF-R(c) limits eligibility to file a grievance (Plaintiff was an administrator).

> b. Defendant, Damon Smith, subjected Plaintiff to racial bias, and Plaintiff was not eligible to file a grievance.  (Plaintiff was told he could not do what white people do and Plaintiff was not eligible to file a grievance for Defendant's reprimand).

> c. Defendant, Damon Smith, discriminated against plaintiff (not following policy and treating Mr. Houston differently than similarly situated individuals).

> d. Plaintiff was not allowed to meaningfully contest the allegations Defendant made against Plaintiff.  (Plaintiff could not appeal Defendant's reprimand and Defendant was the final decisionmaker for reprimands).

> e. Defendant, Damon Smith, told Plaintiff his contract, for the 2022-2023 school year would be non-renewed.  Defendant, Damon Smith, did not tell Plaintiff that he would recommend Plaintiff's contract would be non-renewed.

> f. Plaintiff added value to the school and students because he was a qualified educator of color.  (Retaining educators of color is important - for schools to create a positive, safe, and welcoming environment for all students, it is imperative to have an educator workforce that reflects the racially, ethnically, and linguistically diverse communities they serve).

> g. Defendants neither investigated allegations made by Defendant, Damon Smith, against Plaintiff, nor was there any follow through after Plaintiff's reprimanded to investigate Plaintiff's version of events.  (Defendants did not allow Plaintiff an opportunity to provide Plaintiffs version of events).

> h. The Aurora Public School District Board did not vet Plaintiff's nonrenewal before voting to non-renew Plaintiff.  (Plaintiff's letter of reprimand).

i. Plaintiff's damage included being wrongfully suspended and losing his job as Gateway High School Vice Principal.  (Plaintiff's letter of reprimand and board minutes).

j. The Aurora Public School District stated it "embraces the recruitment and retention of educators of color and will work with the District to prioritize and target their development through differentiated professional development opportunities and mentorship."  (*Aurora Public Schools Resolution on the Recruitment and Retention of Educators of Color*, P. 2, February 18, 2020).

k. Plaintiff embraced mentorship because he is black; Defendant, Damon Smith, punished Plaintiff for being black and embracing mentorship with Gateway High School Principal, Ronald Fay – by interfering with Plaintiff's contract.

*Id.* at 2-3.

Mr. Smith argues that Dr. Hennington's opinions should be excluded to the extent that Dr. Hennington opines on the ultimate issues of law and fact in this case.  Docket No. 34 at 6.[2]  Federal Rule of Evidence 704 allows an expert witness to testify about an ultimate issue.  Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue."); *see also United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015).  "But the rule does not permit an expert to instruct the jury how it should rule if the expert does not provide any basis for that opinion."  *Spice Merchants Entities Corp. v. Pretty Colo., LLC*, No. 24-cv-00371-NRN, 2025 WL 1865283, at *2 (D. Colo. July 7, 2025) (citing *Richter*, 796 F.3d at 1195).  Neither does it permit the Court to allow the admission of testimony that does not otherwise comply with Rule 702. *United States v. Rodriguez*, 125 F. Supp. 3d 1216, 1257 (D.N.M. 2015) ("Although the

---

[2] Mr. Houston responds that, "[i]n this case, testimony eliciting Dr. Hennington's opinion, on an ultimate issue, for the jury to determine, has not be ascertained."  Docket No. 35 at 5.  Mr. Houston's argument is unclear.  To the extent that Mr. Houston is arguing that Mr. Smith's motion should be denied because the Court has not determined whether Dr. Hennington's opinions reach ultimate issues of fact and law, the Court finds that this is not a basis to deny the motion.  Instead, the Court will consider Mr. Smith's arguments that the opinions should be excluded on this basis.

Federal Rules of Evidence eliminated the common-law prohibition on ultimate-issue expert testimony, *see* Fed. R. Evid. 704, that doctrinal shift does not amount to a wholesale abdication of judicial authority—and responsibility—to act as a gatekeeper when the portion of the expert's testimony that goes to the case's ultimate issue falls short of rule 702's requirements."); *see also Richter*, 796 F.3d at 1195 (scrutinizing Rule 704 testimony under Rule 702).

Under Rule 702, an expert's testimony must be helpful to the trier of fact to be admissible.  Fed. R. Evid. 702.  To ensure testimony is helpful, an "expert may not state legal conclusions drawn by applying the law to the facts, but an expert may refer to the law in expressing his or her opinion."  *United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir. 2008) (citation, quotation, and alterations omitted).  "Permissible testimony provides the factfinder with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field."  *Spice Merchants Entities*, 2025 WL 1865283, at *2 (citing *United States v. Dazey*, 403 F.3d 1147, 1171-72 (10th Cir. 2005) ("Even if [an expert's] testimony arguably embraced the ultimate issue, such testimony is permissible as long as the expert's testimony assists, rather than supplants, the jury's judgment.")).  An "expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment."  *Dazey*, 403 F.3d at 1171.  "Expert testimony of this sort has been excluded alternatively on the ground that it usurps the function of the jury in deciding the facts, or because it interferes with the function of the judge in instructing the jury on the law."  *Spice Merchants Entities*, 2025 WL 1865283, at *3 (internal quotations omitted).

Several courts have found that, in discrimination cases, an expert may testify about the basis for the expert's conclusion that the defendant acted with an impermissible motive or in a discriminatory manner but may not testify on the legal conclusion of whether the defendant violated anti-discrimination laws.  For example, in *Mullen v. Claps*, No. 21-cv-02398-CNS-MDB, 2024 WL 989399, at *5 n.2 (D. Colo. Mar. 7, 2024), the court permitted the plaintiff's expert to describe his observations "of his interviews with Plaintiff, including his opinion on what constitutes effective communications specifically for Plaintiff."  However, the court excluded the opinion that the "failure to provide effective communication denied Ms. Mullen equal access to the services offered by the Detention Center."  *Id.* at *5 (The "challenged opinion also states a legal conclusion by applying those federal laws to the challenged discriminatory conduct.  Here, such opinions are impermissible.").  In *Chen-Oster v. Goldman, Sachs & Co.*, 2022 WL 814074, at *10 (S.D.N.Y. Mar. 17, 2022), the court permitted the plaintiff's expert to opine that there were discrepancies between the plaintiff's compensation package and what the expert would have predicted her pay and benefits to be if sex was not a factor.  However, the court prohibited the expert from using the term "sex discrimination" because, by using the term, "he is making a legal conclusion that is improper as it usurps the role of the jury."  *Id.*  Lastly, in *Burns v. SeaWorld Parks & Ent., Inc.*, 2024 WL 710631, at *8 (E.D. Pa. Feb. 21, 2024), the court noted that, in general, "concluding that a party is responsible for 'institutional racism' would not in itself reach an ultimate issue in a case like this one because a Section 1981 plaintiff must prove that the defendant engaged in intentional discrimination," which is distinct from the concept of intentional racism.  However, the court excluded the expert's opinions on "institutional racism" because the expert defined institutional racism to

include intentional discrimination, which was an ultimate issue in the plaintiff's § 1981 claim.  *Id.*

The Court finds that Dr. Hennington's opinions that "Damon Smith[ ] discriminated against Plaintiff and intentionally interfered with Plaintiff's contract with Aurora Public Schools," and "Damon Smith[ ] punished Plaintiff for being black and embracing mentorship with Gateway High School Principal, Ronald Fay – by interfering with Plaintiff's contract," Docket No. 34-2 at 1, 3, are "legal conclusions drawn by applying the law to the facts."  *Bedford*, 536 F.3d at 1158.  As such, Dr. Hennington's opinions impermissibly infringe on the role of the jury in this case.  *Id.*; *Chen-Oster*, 2022 WL 814074, at *10.

Moreover, the Court finds that Mr. Houston has failed to demonstrate that these opinions, as well as Dr. Hennington's opinion that "Damon Smith[ ] subjected Plaintiff to racial bias," Docket No. 34-2 at 2, are helpful to the trier of fact.  Dr. Hennington's report provides no explanation as to how he reached his conclusion that Mr. Houston was discriminated against on account of his race.  *See id.* at 2-3.  Dr. Hennington states that Mr. Houston was not allowed to file a grievance, but he fails to explain why Mr. Houston's inability to file a grievance would support an inference of racial discrimination.  *See id.* at 2.  Dr. Hennington also states that Mr. Smith discriminated against Mr. Houston by "not following policy and treating Mr. Houston differently than similarly situated individuals."  *Id.*  The report does not identify what policies Mr. Smith violated, who the similarly situated individuals were, or how they were treated differently.[3]  *See*

_____

[3] The report indicates that Dr. Hennington intends to use as an exhibit APS Policy GCQF.  Docket No. 34-2 at 4.  This policy supports Dr. Hennington's assertion that Mr. Houston could not appeal Mr. Smith's reprimand.  *See id.* at 39.  The policy

*id.* Finally, Dr. Hennington states that "Damon Smith[ ] told Plaintiff his contract, for the

2022-2023 school year would be non-renewed" but that Mr. Smith "did not tell Plaintiff

that he would recommend Plaintiff's contract would be non-renewed." *Id.* Again, Dr.

Hennington does not explain what about Mr. Smith's omission that he would

recommend that Mr. Houston's contract not be renewed is evidence of discrimination.

"Expert reports 'must be detailed and complete,' and 'must include "how" and "why" the

expert reached a particular result, not merely the expert's conclusory opinions.'" *Leon*

*v. FedEx Ground Package Sys., Inc.*, 2016 WL 1158079, at *11 (D.N.M. Mar. 1, 2016)

(quoting *Salgado by Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 742 (7th Cir. 1998)).

Dr. Hennington's report fails to explain how or why the facts he identifies in his report

support an inference that Mr. Smith violated § 1981.  This is insufficient to demonstrate

that Dr. Hennington's opinions would be useful to the jury.  *Dazey*, 403 F.3d at 1171 (an

"expert may not simply tell the jury what result it should reach without providing any

explanation of the criteria on which that opinion is based or any means by which the jury

can exercise independent judgment."); *Spice Merchants Entities*, 2025 WL 1865283, at

*2 (permissible expert testimony relies on the expert's specialized knowledge to provide

the factfinder with the tools to evaluate an expert's ultimate conclusion); *Mullen*, 2024

WL 989399, at *5 (the "challenged opinion . . . states a legal conclusion by applying

those federal laws to the challenged discriminatory conduct.  Here, such opinions are

impermissible.").  Therefore, the Court will exclude Dr. Hennington's opinions that Mr.

---

does not support Dr. Hennington's assertion that Mr. Smith violated an APS policy.  *See id.*

Smith discriminated against Mr. Houston and that Mr. Smith interfered with Mr. Houston's contract with APS.[4]

### 2. Rule 26(a)(2)(B)

Mr. Smith argues that Dr. Hennington's opinions should be excluded because Mr. Houston's disclosure fails to comply with Rule 26(a)(2)(B) by not identifying the specific factual basis for his opinions. Docket No. 34 at 7. Mr. Smith maintains that every expert report must contain a complete statement of the basis and reasons for the expert's opinions, as well as the facts or data considered by the witness in forming the opinions. *Id.*; *see also* Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). Mr. Smith asserts that Dr. Hennington's report does not disclose the facts or data he considered, but instead generally refers to "[a]ll discovery provided to Plaintiff by Defendants" and "[a]ll discovery provided to Defendant by Plaintiff." *Id.* at 7-8.

Mr. Houston responds that the complaint identifies the APS policy that Mr. Smith allegedly violated. Docket No. 35 at 6-7. Mr. Houston argues that a complete copy of APS Code GCQF, which "Plaintiff's expert intends to use," was included with the expert report. *Id.* (citing Docket No. 34-2 at 4). Mr. Houston also states that Dr. Hennington's report quotes Colorado law, which Mr. Houston appears to assert provided the specific information Dr. Hennington consulted in reaching his opinions. *Id.* at 7. Finally, Mr.

---

[4] Mr. Smith also argues that Dr. Hennington's opinions regarding Mr. Smith's alleged discrimination should be excluded because a jury can understand and decide the issue of whether a person has been discriminated against without expert testimony. Docket No. 34 at 6-7. Mr. Smith maintains that Dr. Hennington's opinions should not be considered expert because they are within the common experience of the jury. *Id.* The Court finds that it is unnecessary to address Mr. Smith's argument because the Court has excluded Dr. Hennington's opinions regarding discrimination on the basis that the opinions have not been adequately explained and are not helpful to the jury.

Houston argues that Dr. Hennington's opinions "would not be a surprise to Defendants."
*Id.* at 8.

The Court finds that Dr. Hennington's report discloses the basis for several of his
remaining opinions.  Dr. Hennington's report discloses the grounds for his opinions that
"Policy GCQF-R(c) limits eligibility to file a grievance," and that "Plaintiff was not allowed
to meaningfully contest the allegations Defendant made against Plaintiff."  Docket No.
34-2 at 2.  Dr. Hennington cites the specific APS Policy that supports Dr. Hennington's
conclusion that administrators like Mr. Houston may not appeal a reprimand.  *Id.*  He
also includes a copy of the APS policy in his report.  *Id.* at 39.  Therefore, Dr.
Hennington will be permitted to testify that APS policy limited Mr. Houston's ability to
appeal Mr. Smith's reprimand.

Dr. Hennington's report identifies the basis for his opinion that APS has stated
that it "embraces the recruitment and retention of educators of color and will work with
the District to prioritize and target their development through differentiated professional
development opportunities and mentorship."  *Id.* at 3.  The report indicates that this
statement is a direct quote from the APS February 2020 Resolution on the Recruitment
and Retention of Educators of Color.  *Id.*  He also discloses the basis for his opinion that
"Plaintiff added value to the school and students because he was a qualified educator of
color" by explaining that "[r]etaining educators of color is important - for schools to
create a positive, safe, and welcoming environment for all students, it is imperative to
have an educator workforce that reflects the racially, ethnically, and linguistically diverse
communities they serve."  *Id.* at 2.

Dr. Hennington identifies Mr. Houston's letter of reprimand as the basis for his
opinion that the APS "Board did not vet Plaintiff's nonrenewal before voting to non-

renew Plaintiff." *Id.*  The Court finds that this is sufficient to meet the disclosure requirements of Rule 26 because the report indicates the basis for Dr. Hennington's opinion.  Mr. Smith does not challenge whether Dr. Hennington's opinion on this issue is based on sufficient facts or data under Rule 702, and the Court will not consider the issue.  *See* Docket No. 34 at 7-11.

However, Dr. Hennington's report fails to identify the basis for two of his opinions. Dr. Hennington states that "Plaintiff's damage included being wrongfully suspended and losing his job as Gateway High School Vice Principal."  Docket No. 34-2 at 3.  The report indicates that Dr. Hennington formed this opinion by reviewing Mr. Houston's letter of reprimand and "board minutes." *Id.*  Dr. Hennington also states that he reviewed "[a]ll public board information relating to board meetings." *Id.*  Dr. Hennington does not identify which APS school board meetings he is referring to.  Rule 26(a)(2)(B) requires greater particularity than a general reference to any possible APS board meeting. *See R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 905, 912 (N.D. Ohio 2008), *aff'd*, 606 F.3d 262 (6th Cir. 2010) (Rule 26(a)(2)(B) disclosure was insufficient where expert stated that he reviewed "the two software programs" without identifying which versions of these programs he reviewed); *see also Little Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, 2015 WL 1105840, at *8 (S.D. Ohio Mar. 11, 2015) (Rule 26(a)(2) disclosures must include more than "a mere reference to a voluminous treatise or file").

Dr. Hennington states that "Defendants neither investigated allegations made by Defendant, Damon Smith, against Plaintiff, nor was there any follow through after Plaintiff's reprimanded to investigate Plaintiff's version of events."  Docket No. 34-2 at 2. Dr. Hennington does not identify what support he has for the proposition that APS board

members did not investigate Mr. Smith's allegations or that they prohibited Mr. Houston

from providing his version of events.  *See id.*  Dr. Hennington's report regarding his

opinions on Mr. Houston's termination and the Board of Education's investigation is

insufficient under Rule 26(a)(2)(B).  Therefore, the Court will consider whether these

opinions should be excluded under Rule 37(c).

### 3.  Rule 37(c)

The Court finds that Mr. Houston's failure to provide an adequate expert

disclosure for Dr. Hennington was not substantially justified or harmless.  First, the

Court finds that Mr. Houston's omissions were not substantially justified.  Initial expert

disclosures were due on September 27, 2024.  Docket No. 22 at 8.  Mr. Smith maintains

that Mr. Houston served Mr. Smith with an insufficient disclosure on that date.  Docket

No. 34 at 8.  After conferral, Mr. Houston filed an unopposed motion to extend the

deadline for expert disclosures until October 30, 2024, which motion the Court granted.

*See* Docket No. 29.  Mr. Smith asserts that, on October 30, 2024, Mr. Houston served

Mr. Smith the inadequate disclosure before the Court.  Docket No. 34 at 8-9.  Mr.

Houston does not contest this timeline of events.  *See* Docket No. 35 at 5-9.  Therefore,

despite being given additional time and being put on notice that the first disclosure was

inadequate, Mr. Houston failed to produce a disclosure that complies with the

requirements of Rule 26(a)(2)(B).

Moreover, considering the first *Woodworker's Supply* factor, the Court finds that

Mr. Smith has been prejudiced by the insufficient disclosure.  At the time Mr. Smith filed

his motion, the deadline to identify rebuttal experts was twenty days away, Docket No.

29, and the discovery deadline was a month away.  Docket No. 22 at 7.  Discovery has

since closed.  Docket No. 54 at 4.  Although the parties include no facts as to whether

Mr. Smith deposed Dr. Hennington, Mr. Smith would have been prejudiced in preparing

to depose Dr. Hennington based on the inadequate disclosure.  Moreover, without

providing the basis for Dr. Hennington's opinions, the disclosure does not allow Mr.

Smith to adequately prepare to cross-examine Mr. Hennington at trial.  Therefore, Mr.

Smith has been prejudiced.  *Cordero v. Froats*, 2016 WL 7426577, at *6 (D.N.M. Sept.

27, 2016) ("Defendants are prejudiced in their ability to prepare for trial, prepare for

depositions or pretrial motions, and to prepare for effective cross-examination.").

The Court finds that Mr. Houston has also failed to demonstrate that Mr. Smith

can cure the prejudice to him from the inadequate disclosures.  *See* Docket No. 35 at 5-

8.  As noted earlier, discovery has closed.  Therefore, if Mr. Smith chose not to take Dr.

Hennington's deposition before the deadline, he may not do so now.  Moreover, any

supplemental or amended disclosure by Mr. Houston regarding Dr. Hennington's

opinions would be untimely.  Although the trial in this case is not set until February 9,

2026, Docket No. 49, Mr. Houston has not asked the Court to reopen discovery.  Docket

No. 35 at 5-8.  Therefore, the Court finds that Mr. Smith's ability to cure the prejudice

weighs in favor of excluding Dr. Hennington's opinions that have not been adequately

disclosed.

The third *Woodworker's Supply* factor weighs in favor of excluding the opinions

because allowing Mr. Houston to introduce Dr. Hennington's testimony on these issues

is likely to disrupt the trial.  Specifically, because the opinions have been inadequately

disclosed, they may be subject to objections that should have been resolved through

motions practice before trial.  Finally, the Court does not find that Mr. Houston acted in

bad faith regarding Dr. Hennington's disclosure.  Therefore, three of the four

*Woodworker's Supply* factors weigh in favor of excluding Dr. Hennington's opinions.

*See Woodworker's Supply*, 170 F.3d at 993; Fed. R. Civ. P. 37(c)(1) ("a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial."). Accordingly, the Court will grant Mr. Smith's motion to the extent it seeks to exclude Dr. Hennington's opinions that "Plaintiff's damage included being wrongfully suspended and losing his job as Gateway High School Vice Principal" and that "Defendants neither investigated allegations made by Defendant, Damon Smith, against Plaintiff, nor was there any follow through after Plaintiff's reprimanded to investigate Plaintiff's version of events." Docket No. 34-2 at 2-3.

## IV.    CONCLUSION

It is therefore

**ORDERED** that Defendant's Motion to Strike Plaintiff's Experts Dr. Ned Calonge and Dr. Marshall Hennington [Docket No. 34] is **GRANTED in part** and **DENIED in part**.

DATED September 17, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge